TIMOTHY H. BELLAS, LLC
Attorney-at-Law
JET Realty Bldg., Suite 204
P.O. Box 502845
Saipan, MP 96950
Email: timothy@bellaslawfirm.com

Telephone: (670) 323-2115

**ATTORNEY FOR:** Plaintiff

FILED
Clerk
District Court

OCT 27 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH PORTS AUTHORITY, AND DOES I-V, <br><br> Defendants. | CIVIL ACTION NO. 17-00012 <br> **PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> 1. BREACH OF CONTRACT <br> 2. VIOLATION OF ANTI HEAD TAX ACT |

Plaintiff, STAR MARIANAS AIR, INC. ("Star Marianas"), by and through undersigned counsel, sues Defendants, COMMONWEALTH PORTS AUTHORITY (the "Authority") of the Commonwealth of the Northern Marianas Islands ("CNMI") and DOES I-V, and in support thereof alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. At all times material hereto, Star Marianas is and was a CNMI corporation with its principal place of business in the CNMI that transacts substantial business in the CNMI.

1

2. At all times material hereto, the Authority is and was an autonomous CNMI corporation created by CNMI, P.L. 2-48. The Authority is tasked with the operation and control of the CNMI airports and seaports with the legislatively mandated goal that "air and sea navigation and transportation within and to and from the Commonwealth must be developed to their fullest potential." 2 CMC § 2111(a).

3. The Authority is the "sponsor" for the airports in the CNMI within the meaning of 14 C.F.R. § 16.3 because it receives federal financial funds.

4. Star Marianas is without knowledge of the true names and capacities of the defendants DOES 1 through V, inclusive, and therefore sues these defendants by such fictitious names. Star Marianas will amend to allege their true names and capacities when it ascertains them.

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under federal law; specifically, 49 U.S.C. § 40116(E)(2), the Anti-Head Tax Act (the "AHTA").

6. This Court has supplemental jurisdiction over Star Marianas's state law claims pursuant to 28 U.S.C. §1367 because these claims are intricately related to Star Marianas's federal claim under the AHTA and form part of the same case or controversy as that claim.

7. Venue is proper in the United States District Court for the Northern Marianas Islands under 28 U.S.C.A. § 1391, as the Court has personal jurisdiction over the parties and the underlying predicate acts that form this action occurred in the CNMI.

## GENERAL ALLEGATIONS

*A.   The Authority is required to apply reasonable charges related to its operational costs.*

8. The CNMI consists of several islands in the northwestern Pacific Ocean.

9. Airports are therefore essential facilities in the CNMI because the only feasible mode of transportation is by air.

10. The Authority is vested with tremendous economic power and leverage based on its control and exclusive bargaining position of the airports in the CNMI.

11. Such economic power, if not properly checked, can adversely impact the profitable and efficient operation of airlines in the CNMI.

12. Under 49 U.S.C. § 47107, the Authority is required to make the airports and their associated facilities available to the public and airport users, including Star Marianas, under reasonable conditions and without unjust discrimination.

13. Pursuant to its exclusive authority over the CNMI airports, the Authority receives federal funding in the form of grants.

14. Because it accepts federal funding grants, the Authority is required to operate airports under its exclusive control "for the use and benefit of the public, on fair and reasonable terms, and without unjust discrimination." 14 C.F.R. Part 152, App. D § II.20.

15. The law also provides that airport rates and charges imposed on aeronautical users for aeronautical use of the airport must be fair, reasonable, and may not unjustly discriminate against aeronautical users. FAA, Policy Regarding Airport Rates and Charges, 78 Fed. Reg. 55330, at § 2 and § 3 (Sep. 10, 2013) ("Rates & Charges Policy"). A true and correct copy of the Rates & Charges Policy is attached hereto as Exhibit "A".

16. The use of charges is limited to collecting revenues for the airport's costs because accumulation of revenues for profit is not consistent with the airport proprietor's obligation to make the airport available on fair and reasonable terms. *See* Exhibit "A" at 55335, § 4.2.1.

17. Importantly, airport proprietors must charge rates in a manner that is transparent. *See* Exhibit "A" at 55335, § 3.4 ("Allowable costs – costs properly included in the rate base – must be allocated to aeronautical users by a transparent, reasonable, and not unjustly discriminatory rate-setting methodology").

18. Under the Anti Head Tax Act ("AHTA"), a state actor, including a port authority in exclusive control of an airport, may not levy or collect a tax, fee, head charge, or other charge on an individual traveling in air commerce. 49 U.S.C. § 40116(b).

19. In passing the AHTA, Congress intended to prevent the undue burden on interstate commerce and the economic harm to airlines and passengers that would result if state or local governments were allowed to raise general revenues on the back of commercial aviation through hidden taxes. The AHTA also ensures that the federal grants to airports are used to supplement funding for airport projects and are not simply used to substitute funds diverted to support local non-airport programs.

20. However, the Authority is operating airports in the CNMI for its own benefit, contrary to the traveling public and the aeronautical users of the airport, by imposing excessive, unreasonable, and discriminatory charges, including head taxes, in order to generate surpluses for non-aeronautical operations.

  B. *The Authority contracts with Star Marianas for operations at CNMI airports.*

21. Star Marianas is a U.S. licensed air carrier operating commercial flights for transportation of passengers and cargo between the islands of Tinian, Rota, Saipan, and Guam.

22. Star Marianas is classified as an aeronautical user of the Saipan International Airport (the "Airport").

23. Star Marianas operates its air carrier services from a smaller, separate terminal at the Airport in Saipan and from the only terminals in Tinian and Rota (collectively referred to hereinafter as the "Commuter Terminals").

24. The Authority has promulgated Airport Rules and Regulations (the "ARR") for use of the Airport and Commuter Terminals. A true and correct copy of the ARR is attached hereto as Exhibit "B".

25. Paragraph 7.9 of the ARR states that no air carrier "shall utilize any terminal facility owned or operated by the Authority unless such air carrier shall have entered into a written Airline Use/Operating Agreement with the Authority." *See* Exhibit "B".

26. On April 24, 2009, Star Marianas executed the required Airline Use Agreement (the "AUA") with the Authority, who executed the AUA on April 27, 2009. A true and correct copy of the AUA is attached hereto as Exhibit "C".

27. Article 1 of the AUA contains the definitions of the various terms used therein. *See* Exhibit "C".

28. The AUA defines Star Marianas as an "Airline". *See* Exhibit "C".

29. Article 2 of the AUA describes the amount of space the Authority leases to Star Marianas. *See* Exhibit "C".

30. The AUA designates areas for different purposes, including: 1) Preferential Use Premises ("PUP"); 2) Common Use Premises ("CUP"); and, 3) Non-Exclusive Use Premises ("NUP"). *See* Exhibit "C".

31. Star Marianas uses 344 square feet of PUP at the Saipan Commuter Terminal and 233 square feet of PUP at the Tinian Commuter Terminal. *See* Exhibit "C".

32. Article 7 of the AUA details the various charges and fees that Star Marianas pays to the Authority. *See* Exhibit "C".

33. For example, Section 7.01 specifies the charges Star Marianas pays for the use of space defined in Sections 2.01, 202, and 2.03 of the AUA by citing to the applicable rates in paragraphs 12.1 and 12.3 of the ARR. *See* Exhibit "C".

34. Paragraph 12.3 provides a departure facility charge per passenger of $4.95 for the Tinian and Rota Commuter Terminals and $3.35 for the Saipan Commuter Terminal. *See* Exhibit "B".

35. These charges correspond with the airport rules and regulations in Public Law Title 40 Commonwealth Ports Authority, chapter 40-10 airport division, subchapter 40-10.1 airport rules and regulations, part 1200 schedule of fees and charges. Specifically, §§ 40-10.1-1205 and 40-10.1-1215.

36. Section 7.01 of the AUA states that these charges are and may be computed on a per-passenger basis, but then summarily declares that these charges are not a head tax on persons travelling in air commerce. *See* Exhibit "C".

37. Article 7 of the AUA specifies that the charges to Star Marianas will be for PUP, CUP, and NUP, as defined in sections 2.01, 2.02, and 2.03 of the AUA. *See* Exhibit "C".

38. However, the use of NUP, which are areas of the airport available for use by any aeronautical user, is negligible because these areas are funded in large part by federal grants.

39. Section 7.07 of the AUA provides that facilities or improvements paid by the use of federal or other governmental grants shall not be included in the costs factors attributed to Star Marianas. *See* Exhibit "C".

40. The costs for NUP are therefore not attributable to Star Marianas pursuant to section 7.07 of the AUA. *See* Exhibit "C".

41. For the purpose of assigning and allocating costs, section 7.05 of the AUA states that the Authority shall utilize generally accepted accounting principles, include only those charges properly attributable to the airports that the Authority owns and operates, and apply rates that are reasonable and non-discriminatory. *See* Exhibit "C".

42. Importantly, section 7.05 requires the Authority to annually adjust its rates based on the Authority's actual costs of the facility or service that Star Marianas uses. *See* Exhibit "C".

43. Section 7.08 of the AUA provides the process by which the Authority will arrive at the reasonable and non-discriminatory rates to charge Star Marianas for its use of the Airport and Commuter Terminals.

44. Specifically, section 7.08 requires the Authority to mail Star Marianas a copy of the proposed Airport budget for the next fiscal year 45 days prior to final adoption by the Authority. Star Marianas may then submit written comments within 15 days prior to the Authority's final adoption, which the Authority shall give due consideration to. After final adoption, the Authority shall furnish a copy of the adopted Airport budget to Star Marianas. Further, the Authority shall notify Star Marianas near the end of the fiscal year the charges for the ensuing fiscal year. *See* Exhibit "C".

45. Should the Authority fail to complete the above procedure, section 7.08 states that Star Marianas shall continue to pay at the previous rate until the Authority completes its computations. Thereafter, the Authority shall adjust the rates accordingly and any difference will be added or deducted from what Star Marianas already paid. *See* Exhibit "C".

46. Section 7.10 of the AUA mandates that the Authority use its best efforts to complete its computations within 120 days from the close of the fiscal year. *See* Exhibit "C".

47. In 2011, Star Marianas entered into a lease agreement with the Authority for the use of space at the Rota Commuter Terminal (the "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit "D".

48. The reasonable use value of the space for the Lease was set at $320.00 per month, including the cost of utilities. *See* Exhibit "D".

49. When Star Marianas executed the Lease it only operated cargo services and did not transport any passengers, but Star Marianas later expanded its operations to provide passenger transportation to the Rota Commuter Terminal.

50. The Authority does not provide airside access to Star Marianas at the Rota Commuter Terminal, but does so for other airlines, which means Star Marianas must enplane its passengers through the terminal arrival area.

C. *The Authority violated the AUA and federal law.*

51. Since Star Marianas has been operating as an airline at the Commuter Terminals, the Authority has never complied with the cost accounting and fee adjustments the AUA requires in section 7.08. The Authority has never provided Star Marianas with a proposed budget nor any notice of a change in rates despite Star Marianas's repeated demands for an accounting of the Authority's charges.

52. Star Marianas has made several requests to the Authority since 2009 for the disclosure of audited accounting records mandated by federal regulations and the AUA, but the Authority has never provided any financial documentation.

53. Star Marianas made these requests because it believed the Authority was assessing it fees that exceeded the Authority's actual operational costs properly apportioned to Star Marianas.

54. Star Marianas made payments to the Authority under duress because of the Authority's economic power in the CNMI and conspicuously wrote "under protest" on the payment instruments.

55. Section 7.07 of the AUA provides that any capital costs of the improvements and facilities at the Commuter Terminals, or any depreciation thereof, that are paid by federal or other government entity grants shall not be included in the calculation of costs to be paid by Star Marianas. *See* Exhibit "C".

56. Pursuant to section 7.05 of the AUA, the Authority may only take into account its actual costs attributable to Star Marianas when charging a reasonable rate. *See* Exhibit "C".

57. Specifically, section 7.05 of the AUA provided the following:

> Authority covenants that for purposes of *assigning and allocating costs*, it shall utilize generally accepted accounting practices utilized for airports operating as an enterprise fund, and include only those charges properly attributable to the Airport System….All rates and charges shall be at reasonable and non-discriminatory rates and *adjusted annually based on Authority's cost*, as defined in this Agreement, of the facility or service provided to and used by Airline.

*See* Exhibit "C" (emphasis added).

58. Star Marianas requires the Authority's accounting costs of operating the Commuter Terminals in order to determine what costs can be apportioned to Star Marianas because the Authority's rates and charges are not transparent.

59. On August 26, 2016, the Authority, by and through its accounting agents Ricondo & Associates, Inc., served a letter and calculations relating to the Authority's rates and charges from 2009-2014. In this letter, the Authority applied rates up to $6.95 for the Commuter Terminals. A true and correct copy of the August 26, 2016 letter is attached hereto as Exhibit "E".

60. On July 13, 2017, the Authority provided a letter relating to its rates and charges for 2015. In this letter, the Authority applied rates for the Saipan Commuter Terminal at $4.75. A true and correct copy of the July 13, 2017 letter is attached hereto as Exhibit "F".

61. The above specified commuter terminal charges are unlawful because under §40-10.1-1215(a) (2) and (3) commuter terminal fees for Rota and Tinian are _capped_ at $4.95 and fees for Saipan at $3.35. The Authority is permitted to decrease the above described fees by §40-10.1-1215(c) but not to exceed the ceiling amounts.

62. The Authority has provided no description or analysis relating to these charges, which are higher than the charges permitted in the AUA and ARR.

63. Upon information and belief, the Authority charged an arbitrary rate under a commercial compensatory method resulting in the highest rates unrelated to the Authority's actual expenses.

64. Upon information and belief, the Authority charged Star Marianas for amounts not related to its actual operational costs for the services it provided to Star Marianas and it charged for facilities that are funded by federal grants.

65. The Authority has engaged in practices over the past few years of making unreasonable charges and not collecting charges relating to its actual costs.

66. On April 29, 2016, the acting director for the office of airport compliance and management analysis for the Federal Aviation Administration ("FAA") found the Authority in violation of its federal obligations regarding the application of liability insurance requirements for general aviation operators at the Airport. Specifically, the Authority charged an arbitrary amount to all aviation operators at the Airport without any basis for doing so.

67. On October 4, 2016, an independent auditor reviewed the Authority's compliance with its passenger facility charge program, which permits the Authority to charge a rate per passengers for FAA-approved projects. The audit revealed that the Authority charged rates for FAA-approved projects it never commenced, for projects the FAA never approved, and failed to properly report its expenditures and revenues.

68. The foregoing evidences the Authority's repeated failure to properly charge airlines at the Airport/Commuter Terminals and its continuous refusal to provide any analysis into its own accounting.

69. Further, the Authority is not permitted under the AHTA to assess an arbitrary fee based solely on the number of Star Marianas's passengers. Rather, the Authority's charges must bear a reasonable relationship with its actual operational costs.

70. For example, when Star Marianas expanded its operation at the Rota Commuter Terminal to include passenger transportation, the Authority demanded that Star Marianas pay additional user fees of $4.95 per passenger for the same space in the Lease. The charge amount based solely on the number of Star Marianas's passengers averaged an additional $3,200.00 per month—more than 10 times greater than the amount specified in the Lease.

71. The Authority knowingly and willfully violated the AUA and federal law when it failed to provide an accounting of its operational costs to Star Marianas and charged an arbitrary per-passenger rate not related to the operational costs for the Commuter Terminals.

72. The Authority's improper actions damaged Star Marianas because it charged Star Marianas with unreasonable and excessive fees not permitted under the AUA or federal law.

## COUNT I
## BREACH OF CONTRACT

73. Star Marianas re-alleges and reincorporates paragraphs 1 through 72 as if fully set forth herein.

74. The AUA is a valid and binding agreement between the parties.

75. Star Marianas made numerous payments to the Authority pursuant to the AUA.

76. For example, Star Marianas paid $325,706.00 to the Authority under the charges in the AUA and the ARR for the use of the Saipan and Tinian Commuter Terminals in 2015.

77. However, the Authority has failed to comply with the AUA's requirements in Article 7 relating to accounting and apportioning its charges to Star Marianas.

78. Specifically, the Authority has never provided Star Marianas a copy of its proposed annual budget.

79. Based on the foregoing, Star Marianas has never had the opportunity to submit comments for consideration as contemplated by the AUA.

80. Further, the Authority has never annually adjusted the fees it charged to Star Marianas in order to recover its legitimate operational costs. Rather, it continuously charged an arbitrary amount per passenger as a head tax unrelated to the Authority's operational costs.

81. Star Marianas made several demands to the Authority for production of the audited cost recovery records, but the Authority has not complied.

82. The Authority continues to breach the AUA by not providing its operational cost financial information and by continuing to charge a head tax per passenger instead of a reasonable rate related to its operational costs.

83. The $325,706.00 amount from 2015, when divided to a monthly rate, approximately results in a monthly charge in excess of $27,000.00. This evidences the Authority's rates are unreasonable because that amount per month is excessive for the amount of space Star Marianas uses at the Saipan and Tinian Commuter Terminals, which are 344 and 233 square feet, respectively.

84. The Authority's breach damaged Star Marianas in an amount to be determined at trial by charging Star Marianas fees that exceeded those permissible in the AUA; namely, charges based on a per passenger basis that related to costs for areas paid by federal grants and that exceeded the Authority's actual costs that may be properly apportioned to Star Marianas as operational costs.

85. Based on its own accounting records, Star Marianas estimates that it paid excessive Commuter Terminal fees greater than the reasonable fees that the Authority should have properly charged by hundreds of thousands of dollars.

WHEREFORE, Star Marianas respectfully requests that this Court enter judgment in its favor and against the Authority awarding damages that Star Marianas sustained in amounts to be proven at trial, any and all other damages to which Star Marianas may be entitled under applicable law, pre-judgment and post-judgment interest as allowed by law, attorney's fees and costs in this action pursuant to section 14.18 of the AUA, and award all other relief this Court deems just, equitable, and proper.

## COUNT II
## VIOLATION OF THE AHTA

86. Star Marianas re-alleges and reincorporates paragraphs 1 through 72 as if fully set forth herein.

87. The AHTA provides that a local authority is not permitted to charge a fee based on an individual traveling in air commerce.

88. The Authority imposes a fee that is not related to the recovery of the adjusted annual cost of the Authority for operations of the Commuter Terminals attributable to Star Marianas.

89. Instead, the Authority assesses user fees solely based on the number of Star Marianas passengers that it enplaned at the Commuter Terminals.

90. This results in user fees to Star Marianas that do not bear any relationship to the Authority's operational expenses.

91. Because the rates that the Authority charged to Star Marianas are not based on its costs of operations or services, but solely on the number of Star Marianas's passengers, this methodology is a head tax in violation of the AHTA.

92. The language of the AUA in section 7.01 stating that the Authority's fees shall not be considered a head tax is inapplicable because the rate charged per person is on its face a head tax and the Authority cannot contract away its violation of federal law.

93. The Authority knowingly violated the AHTA because it did not impose additional charges to Star Marianas for the space in the Lease until Star Marianas expanded its operations to begin transporting passengers and these additional charges are based on a per-passenger rate.

94. The disparity between the $302.00 rent per month in the lease and the $3,200.00 average per month for charges relating to Star Marianas's passengers, evidences that the fees the Authority charges are not based on the proportional recovery of its costs, but purely on the number of passengers in violation of the AHTA and other federal law.

95. Based on the number of years that the Authority has improperly charged a head tax, Star Marianas has suffered damages for these unreasonable user fees, the exact amount of which will be determined at trial.

WHEREFORE, Star Marianas respectfully requests that this Court enter judgment in its favor and against the Authority awarding damages that Star Marianas sustained in amounts to be proven at trial, any and all other damages to which Star Marianas may be entitled under applicable

///

law, and award all other relief this Court deems just, equitable, and proper.

                                       TIMOTHY H. BELLAS
                                       ATTORNEY AT LAW

Dated this 27th day of October, 2017.     /s/ *Timothy H. Bellas*
                                       Timothy H. Bellas, F-0135
                                       Attorney for Plaintiff