**ROBERT T. TORRES (F0197)**
ATTORNEY AT LAW
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 503758 CK
Saipan, MP 96950
Telephone: (670) 234-7859
Facsimile: (670) 234-5749

*Attorney for Defendant Commonwealth Ports Authority*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC., | Civil Case No. 17-00012 |
| Plaintiff, | DEFENDANT COMMONWEALTH PORTS AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |
| vs. | |
| COMMONWEALTH PORTS AUTHORITY, AND DOES 1-V, | |
| Defendants. | Hearing: Time: Designated Judge Frances M. Tydingco-Gatewood |

**Table of Contents**

I. INTRODUCTION ................................................................................................................. 1

II. FACTUAL ALLEGATIONS ................................................................................................ 1

III. LEGAL STANDARDS ........................................................................................................ 3

IV. ARGUMENT ....................................................................................................................... 4

A.   The Weight of Persuasive Authority Establishes that the AAIA Does Not Provide for an Implied Private Right of Action ........................................................................................................... 5

B.   The AHTA Does Not Provide for a Private Right of Action .......................................... 9

C.   There is No Jurisdiction under the Federal Preemption Provision of the Airline Deregulation Act ..................... 9

D.   The FAA Has Primary Jurisdiction over SMA's Claims ................................................ 12

V. CONCLUSION..................................................................................................................... 12

**Table of Authorities**

Cases

49 U.S.C. § 40103(a), ................................................................................................................... 9

*Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) ...................................................................... 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)........................................................ 4

*Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)...................................................... 6

*Commonwealth Utilities Corp. v. Johnson*, 245 F.Supp.3d 1239, 1246-47 (2017)................ 3, 4

*Cort v. Ash In re Digimarc Corp. Derivative Litig.,* 549 F.3d 1223, 1231 (9th Cir. 2008)............... 6

*Cort v. Ash*, 422 U.S. 66, 78 (1975)............................................................................................. 6

*Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010)........................................... 4

*E. Hampton Airport Prop. Owners Ass'n, Inc. v. Town Bd. of Town of E. Hampton,* 72 F.Supp.2d 139, 147 (E.D.N.Y.1999)...... 8

*Erickson v. Pardus*, 551 U.S. 89, 84 (2007)................................................................................ 4

*Four T's Inc. v. Little Rock Municipal Airport Commission,* 108 F.3d 909, 915-16 (8th Cir.1997)................................ 8

*In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 406 (9th Cir. 1979) ........................ 9

*Interface Group, Inc. v. Massachusetts Port Auth.,* 816 F.2d 9, 15 (1st Cir.1987) ..................... 7

*Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014) ....................................................... 3

*McCasland v. City of Castroville,* 514 F. App'x 446, 448 (5th Cir .2013).................................. 8

*National Business Aviation Ass'n, Inc. v. City of Naples Airport Authority*, 162 F.Supp.2d 1343, 1349 (M.D. Fla., 2001) ........... 9

*New England Legal Found. v. Massachusetts Port Auth.,* 883 F.2d 157, 168 (1st Cir. 1989) ..... 7

*New York Airlines. Inc. v. Dukes County*, 623 F. Supp. 1435 (D. Mass. 1985). ........................ 7

*Northwest Airlines, Inc. v. County of Kent Mich.,* 955 F.2d 1054, 1058 (6th Cir. 1992) ............ 7

*Papasan v. Allain*, 478 U.S.265, 286 (1986).............................................................................. 4

*Smith v. Dearborn Financial Services, Inc.,* 982 F.2d 976, 979 (6th Cir.1993).......................... 8

*Star Marianas Air, Inc. v. Commonwealth Ports Authority*, 2018 WL 3043677, at *2 (D.N.Mar.I., 2018) .............................. 6, 9

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)...................................................... 6

*W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.,* 817 F.2d 222, 225 & n. 4 (2d Cir.1987) ................................................................ 8

*Ziglar v. Abbasi*, ─── U.S. ───, 137 S.Ct. 1843, 1855 (2017) ............................................................................................ 8

**Statutes**

49 U.S.C. § 40101 .................................................................................................................................................. 9

49 U.S.C. § 41713 ............................................................................................................................................. 9, 10

49 U.S.C. § 47107 ............................................................................................................................................. 5, 6, 7

49 U.S.C. § 47129(b)(2) ....................................................................................................................................... 10

49 U.S.C. § 47129(f)(1). ....................................................................................................................................... 10

49 U.S.C.A. § 46110 .............................................................................................................................................. 12

**Rules**

Fed. R. Civ. P. 12 (b)(1) ......................................................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) .......................................................................................................................................... 4

**Regulations**

Fed. Reg. 55330 § 4.2.1 ......................................................................................................................................... 11

## I. INTRODUCTION

Plaintiff Star Marianas Air, Inc. ("SMA") has filed a Second Amended Complaint against Defendant Commonwealth Ports Authority ("CPA'") claiming breach of contract. The Second Amended Complaint is now styled solely as a breach of contract claim, with SMA arguing that CPA has breached a contract by violating federal law. SMA has stripped the Second Amended Complaint of most references to violations of the Anti Head Tax Act, although not all, but continues to assert jurisdiction through federal laws that do not provide for a private right of action. This Court continues to lack jurisdiction over the claim made in the Seconded Amended Complaint and CPA therefore brings this motion to dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## II. FACTUAL ALLEGATIONS

SMA is a corporation of the Commonwealth of the Northern Mariana Islands ("CNMI"). (ECF 26 ¶ 1). SMA is a Federal Aviation Administration ("FAA") certificated air carrier that performs scheduled and on-demand operations for transportation of passengers and cargo between the islands of Tinian, Rota, Saipan, and Guam. (ECF 26 ¶ 19). SMA is classified as an aeronautical user of the Saipan International Airport. (ECF 26 ¶ 23).

CPA is an autonomous CNMI corporation tasked with the operation and control of the CNMI airports and seaports. (ECF 26 ¶ 2). Pursuant to its exclusive authority over the CNMI

airports, CPA receives federal funding in the form of grants, and is therefore a "sponsor" for the CNMI airports. (ECF 26 ¶ 11, 12)[1].

In April 2009, SMA executed an Airline Use Agreement and Lease of Premises with CPA (hereinafter "AUA"). (ECF 26 ¶ 29). The AUA details the various charges and fees that SMA agreed to pay to CPA. (ECF 26 ¶ 35). Section 7.01 of the AUA specifies the charges SMA pays for the use of space. (ECF 26 ¶ 36). Section 7.02 of the AUA provides additional charges that CPA may charge under the authority of its Rules and Regulations. (ECF 26 ¶ 37). Paragraph 12.2 of the AUA governs landing fees. (ECF 26 ¶ 38). Paragraph 12.3 provides a departure facility charge per passenger for the Tinian, Rota, and Saipan Commuter Terminals. (ECF 26 ¶¶ 36, 40).

Section 7.08 of the AUA requires CPA to mail SMA a copy of the proposed budget for the next fiscal year, 45 days prior to CPA's final adoption. (ECF 26 ¶ 51). Under Section 7.08 of the AUA, SMA has 15 days to submit written comments prior to adoption, which comments CPA must consider. (ECF 26 ¶ 51). After final adoption, CPA must give a copy of the adopted budget to SMA and notifying SMA of the charges for the upcoming fiscal year. (ECF 26 ¶ 51). If CPA is not able to timely comply with the above procedure, the AUA provides that SMA shall continue to pay at the previous rate until CPA's computations are complete. (ECF 26 ¶ 52). Thereafter, CPA is required to adjust its rates according the computations and any difference between the computations and the rates already paid are to be added or deducted from the calculations. (ECF 26 ¶ 52). Section 7.10 of the AUA mandates CPA to use its best

---

[1] In paragraph 13 of the Second Amended Complaint, SMA cites Part 152 as an obligation of CPA. Part 152, however, governs the Airport Development Program, which ended in 1982, when the Airport Improvement Program was enacted into law. Except for some lingering obligations that may arise due to land acquisitions under the Airport Development Program, Part 152 is no longer applicable.

efforts to complete the calculations within 120 days from the close of the fiscal year; alternatively, CPA is required to calculate the rates and charges for the previous fiscal year as soon as the audited financial data is available. (ECF 26 ¶ 53, 54).

SMA claims CPA has violated federal law by imposing improper rates. CPA's claims that the rates are improper are based on allegations that (1) CPA has not made annual adjustments to its rates as set forth in Section 7.08 and 7.10 of the AUA (ECF 26 ¶ 60); (2) CPA has assessed fees which exceed its operational costs, in violation of 49 U.S.C. § 47107, the Airport and Airway Improvement Act ("AAIA") (ECF 26 ¶ 62-63); (3) CPA's rates are in violation of CPA's Rules and Regulations (ECF 26 ¶ 76); (4) CPA's rates are in violation of 49 U.S.C. § 40116, the Anti Head Tax Act ("AHTA") (ECF 26 ¶ 77); and (5) SMA reasonably believes that CPA is charging SMA for costs of Non-Exclusive Premises, which SMA believes is funded mostly by federal grants and therefore should not be charged to SMA.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12 (b)(1). Jurisdiction may be challenged with either "(1) a 'facial' attack that accepts the truth of a plaintiff's allegations but asserts that they are insufficient to invoke federal jurisdiction, or (2) a 'factual' attack that contests the truth of a plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Commonwealth Utilities Corp. v. Johnson*, 245 F.Supp.3d 1239, 1246-47 (2017) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014)). The district court treats facial attacks on jurisdiction as it would a motion to dismiss under Rule 12(b)(6), and accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor to determine

3

whether the allegations are sufficient to invoke the court's jurisdiction. *See Commonwealth Utilities Corp.,* 245 F.Supp.3d at 1247 (internal citations omitted). The party alleging subject matter jurisdiction has the burden of establishing it. *See id.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain enough facts to show that the claim to relief is plausible on its face. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal citations omitted). A court must accept as true all factual allegations contained in a complaint. *See Erickson v. Pardus*, 551 U.S. 89, 84 (2007) (internal citations omitted). A court, however, is not required to accept as true legal conclusions couched as factual allegations. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S.265, 286 (1986)). A plaintiff's burden of providing the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 597 (internal citation omitted). Factual allegations must contain more than mere speculations. *Id.* at 545 (internal citation omitted).

## IV. ARGUMENT

SMA alleges CPA has breached the AUA by charging rates that are in violation of its obligation to charge reasonable rates under the AAIA. (ECF 26 ¶ 4). SMA claims this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under federal law, specifically, 49 U.S.C. § 47107, the AAIA. (ECF 26 ¶ 4). SMA further claims that this Court has jurisdiction under federal preemption pursuant to 49 U.S.C. § 41713, because CPA's rates affect SMA's rates and other airlines. (ECF 26 ¶ 5).

4

While SMA asserts jurisdiction over alleged violations of federal law, a closer look at SMA's claims reveal that the Second Amended Complaint is a plain breach of contract dispute which does not belong in this federal court. In support of this assertion, CPA sets forth as follows: (1) the weight of persuasive authority establishes that the AAIA does not provide for a private right of action; (2) the AHTA does not provide for a right of action; (3) there is no jurisdiction under the federal preemption provision of the Airline Deregulation Act because this statute does not apply to an airport sponsor's proprietary powers; and (4) the FAA has primary jurisdiction over SMA's claims.

## A. The Weight of Persuasive Authority Establishes that the AAIA Does Not Provide for an Implied Private Right of Action

SMA claims that the AUA, or at least the way CPA is implementing the AUA, violates the AAIA and further claims that Section 7.05 of the AUA incorporates the requirements of the AAIA. (ECF 26 ¶ 64, 104).

In response, CPA first notes that Section 7.05 of the AUA does not incorporate the AAIA. The AUA provides that rates and charges shall be reasonable and non-discriminatory. Under the AAIA, the Secretary of Transportation may approve a project grant application if written assurances are given that the airport will be available for public use on reasonable conditions and without unjust discrimination. 49 U.S.C. § 47107. While the AUA similarly provides that rates and charges will be unreasonable and non-discriminatory, this is not an incorporation of the AAIA.

Further, SMA's breach of contract claim arises out of CPA's alleged violation of the AAIA. However, nowhere in the AAIA does it provide for an express and explicit right of

5

action. The AAIA addresses required assurances that must be made to the satisfaction of the Secretary prior to approval of an airport development project. *See* 49 U.S.C. § 47107.

Absent an express right of action, neither the U.S. Supreme Court nor the Ninth Circuit have decided whether the AAIA provides an implied private cause of action. Absent such controlling authority, the weight of persuasive authority establishes that the AAIA does not provide a private cause of action, either expressly or impliedly. The U.S. Supreme Court has established that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)). Whether or not a statutory cause of action exists is an issue of statutory construction. *Touche-Ross,* 442 U.S. at 568. In order to determine whether a federal statute confers an implied right of action, the four-factor test from *Cort v. Ash In re Digimarc Corp. Derivative Litig.,* 549 F.3d 1223, 1231 (9th Cir. 2008) must be applied. *Star Marianas Air, Inc. v. Commonwealth Ports Authority*, 2018 WL 3043677, at *2 (D.N.Mar.I., 2018). The four factors are as follows: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is evidence of legislative intent to create or deny a remedy; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is "traditionally relegated to state law." *Id.* (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The central inquiry is the second factor, whether Congress intended to create a private right of action under a federal statute. *Id.; Touche Ross*, 442 U.S. at 575-76 (declining to address the other factors of the language and focus of the statute, its legislative history, and its purpose, as set forth in *Cort v. Ash*, 422 U.S. at 68, because

the statute at issue granted no private rights and its legislative history did not discuss private remedies).

With regard to the first factor considering whether SMA belongs to the class for whose "especial benefit" the AAIA was enacted, CPA submits that the AAIA was likely enacted for the benefit of air carriers. The AAIA opens by stating that one of the written assurances that must be received in a manner satisfactory of the Secretary of Transportation is that "air carriers making similar use of the airport will be subject to substantially comparable charges." 49 U.S.C. § 47107(a)(2). The legislative history of the AAIA indicates that "in enacting the [AAIA], "Congress intended to benefit air carriers by imposing a requirement on airport operators that carriers be subject to nondiscriminatory and substantially comparable treatment." *New York Airlines. Inc. v. Dukes County*, 623 F. Supp. 1435 (D. Mass. 1985).

As for the second and most important factor, the AAIA does not contain evidence of legislative intent to create or deny a remedy. The fact that the AAIA provides that assurances must be given to the Secretary of Transportation regarding reasonable terms and rates of an airport development project indicates that Congress intended to establish an administrative enforcement scheme. *See Northwest Airlines, Inc. v. County of Kent Mich.,* 955 F.2d 1054, 1058 (6th Cir. 1992) (citing *Interface Group, Inc. v. Massachusetts Port Auth.,* 816 F.2d 9, 15 (1st Cir.1987)).

The majority of the circuits that have addressed the issue have held that the AAIA does not have an implied right of action. *See New England Legal Found. v. Massachusetts Port Auth.,* 883 F.2d 157, 168 (1st Cir. 1989) (no private cause of action existed under the AAIA, 49 U.S.C. App. § 2210, the AAIA's precursor); *Northwest Airlines,,* 955 F.2d at 1058 (interpreting

§ 2210 (the AAIA's precursor) and holding that "Congress intended that there would be no private cause of action under section 2210"); *E. Hampton Airport Prop. Owners Ass'n, Inc. v. Town Bd. of Town of E. Hampton,* 72 F.Supp.2d 139, 147 (E.D.N.Y.1999) ("in accordance with the First, Sixth, Eighth and Eleventh Circuits, the Court finds that Section 47107 does not give rise to a private right of action."); *McCasland v. City of Castroville,* 514 F. App'x 446, 448 (5th Cir .2013) ("As several circuit courts have held, and as Plaintiffs appear to concede, 49 U.S.C. § 47107 and its predecessor statute do not create a private right of action for parties aggrieved by alleged discrimination."); *W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.,* 817 F.2d 222, 225 & n. 4 (2d Cir.1987) (holding 49 U.S.C. § 2210(a) — AAIA's precursor — did not create a private right of action); *Four T's Inc. v. Little Rock Municipal Airport Commission,* 108 F.3d 909, 915-16 (8th Cir.1997) (holding that no private right of action exists under any of the provisions of the AAIA).

This court should decline to create a private cause of action where Congress has not. *See Alexander v. Sandoval,* 532 U.S. 275, 286 (2001) (holding that for a cause of action to exist, a statute must show an intent "to create not just a private right but also a private remedy."); see also *Smith v. Dearborn Financial Services, Inc.,* 982 F.2d 976, 979 (6th Cir.1993) ("federal regulations cannot themselves create a cause of action; that is a function of the legislature.").

As noted by this Court in its previous decision dismissing SMA's First Amended Complaint, the U.S. Supreme Court has applied a more restrictive method for finding implied causes of action. (ECF 25 at 7-8, citing *Ziglar v. Abbasi*, ––– U.S. ––––, 137 S.Ct. 1843, 1855 (2017) (noting that the Court has "adopted a far more cautious course before finding implied

8

causes of action" because "where Congress intends private litigants to have a cause of action, the far better course is for Congress to confer that remedy in explicit terms.") Because there is no congressional intent to create a private right of action, express or implied, the remaining *Cort* factors need not be addressed. *Id.* (citing *In re Mexico City Aircrash of Oct. 31, 1979*, 708 F.2d 400, 406 (9th Cir. 1979)).

### B. The AHTA Does Not Provide for a Private Right of Action

As noted by this Court in its previous decision dismissing SMA's First Amended Complaint, the AHTA does not provide for a private right of action. (ECF 25 at 8) ("In sum, the Court finds that there is no private right of action under the AHTA and the Plaintiff may not maintain its claim.")

### C. There is No Jurisdiction under the Federal Preemption Provision of the Airline Deregulation Act

SMA claims this Court has jurisdiction over its breach of contract claim under the federal preemption provision of 49 U.S.C. § 41713, the Airline Deregulation Act. The Federal Aviation Act, 49 U.S.C. § 40101 *et. seq.*, has expressly and impliedly preempted certain areas related to aviation. *National Business Aviation Ass'n, Inc. v. City of Naples Airport Authority*, 162 F.Supp.2d 1343, 1349 (M.D. Fla., 2001). States are prohibited from regulating the airspace over the U.S. pursuant to 49 U.S.C. § 40103(a), which establishes that the U.S. Government has exclusive sovereignty of U.S. airspace. *Id.* Along those same lines, 49 U.S.C. § 41713(b)(1), titled "Preemption," expressly provides that "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce

9

a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." However, subsection (b)(3) of 49 U.S.C. § 41713 qualifies this express preemption by stating that the subsection expressly providing for preemption "does not limit a State, political subdivision of a State, or political authority of at least 2 States that owns or operates an airport served by an air carrier holding a certificate issued by the Secretary of Transportation from carrying out its proprietary powers and rights." 49 U.S.C. § 41713(b)(3).

CPA falls within the exception created by 49 U.S.C. § 41713(b)(3) because it is within CPA's proprietary powers and rights to charge reasonable fees. SMA argues CPA's fees run afoul of the Rates and Charges Policy, and are therefore unreasonable. While it is true that airports imposing fees and rates must comply with the Rates and Charges Policy, the Rates and Charges Policy does not apply to fees established pursuant to an agreement. Subsection (f)(1) of 49 U.S.C. § 47129 states that it "does not apply to…a fee imposed pursuant to a written agreement with air carriers or foreign air carriers using the facilities of an airport." 49 U.S.C. § 47129(f)(1). The trigger for the Rates and Charges Policy was the enactment of Section 133 of the FAA Reauthorization Act of 1994, now codified as 49 U.S.C. § 47129(b)(2), requiring the Department of Transportation/FAA to publish "standards or guidelines that shall be used by the Secretary in determining under this section whether an airport fee is reasonable." Thus, the exclusion in 49 U.S.C. § 47129(f)(1) makes it clear that the policy adopted pursuant to 49 U.S.C. § 47129(b)(2) is inapplicable to rates set forth by agreement.

In this case, the rates are not being imposed upon SMA, but are set pursuant to the AUA that SMA executed with CPA back in 2009. Under 49 U.S.C. § 47129(b)(2), therefore, the rates are de facto reasonable.

Furthermore, even if the Rates and Charges Policy was applicable in this instance, which it is not, SMA cites Section 4.2.1 of the Rates and Charges Policy as support for its assertion that the "use of charges is limited to collecting revenues for the airport's costs because accumulation of revenues for profit is not consistent with the airport proprietor's obligation to make the airport available on fair and reasonable terms." (ECF 26 ¶ 16). This is a misrepresentation of Section 4.2.1, which states that "the progressive accumulation of substantial amounts of surplus aeronautical revenue may warrant FAA inquiry…" **Fed. Reg. 55330 § 4.2.1**. This is a very different statement than SMA's assertion that that all user charges must be limited to airport costs.

Even further, SMA claims that it needs CPA's accounting costs of operating the terminals in order to determine what costs can be apportioned to SMA because SMA believes that the rates and charges are not transparent. (ECF 26 ¶ 63). This is an overbroad assertion. Assuming that the Rates and Charges Policy applies here (which, again, it does not), neither the Rates and Charges Policy nor the AAIA state that CPA may only take into account its actual costs attributable to SMA when charging reasonable rates. It is true that airfield fees must be based on historical costs, but that limitation is not true for other airport charges.[2]

---

[2] SMA also argues that the airport rates and charges affect SMA ticket prices. (ECF 26 ¶ 24). SMA, however, sets ticket prices based on market forces, not costs.

11

### D. The FAA Has Primary Jurisdiction over SMA's Claims

SMA has no right to enforce the AHTA or the AAIA through a private action commenced in a federal court of first instance. SMA must pursue its complaints initially in administrative proceedings before the Secretary of Transportation, which decision may then be subject to judicial review in a federal district court. *See* 49 U.S.C.A. § 46110.

SMA has filed an Amended Complaint against CPA under Title 14 CFR Part 16 in the United States Department of Transportation, Federal Aviation Administration, under FAA Docket No. 16-14-02; a copy of that Amended Complaint has already been provided to this Court. SMA's claim is already being heard via the administrative process before the FAA, and this is where SMA's claim should be. Because the FAA has the primary jurisdiction to determine SMA's claims, and, more importantly, because the FAA has the expertise necessary to decide SMA's claims, this Court should require SMA continue its pursuit of its administrative remedy and should dismiss SMA's private action in this Court.

### V. CONCLUSION

SMA's Second Amended Complaint must be dismissed. SMA alleges CPA breached the AUA by violating federal laws. The only federal laws SMA cites, however, are the AAIA and the AHTA and neither of these federal laws confer a private right of action. SMA alleges the Airline Deregulation Act confers federal jurisdiction, but the very authority SMA cites contains an exception for an airport's proprietary powers. Stripped of these wisps of federal jurisdiction, SMA's Second Amended Complaint is a plain vanilla breach of contract dispute between CNMI entities, which does not belong before this Court. This dispute is already properly before

process before the FAA, which has primary jurisdiction over this dispute, and this is where SMA's claims should remain.

Respectfully submitted this 27th day of July, 2018.

/s/ *Robert T. Torres*
Robert T. Torres
Attorney for Defendant
Commonwealth Ports Authority

**CERTIFICATE OF SERVICE**

I hereby certify that the following were served with the foregoing document and all attachments thereto via the Court's Case Management/Electronic Case Filing system (CM/ECF):

*Attorneys for Plaintiff Star Marianas Air, Inc.*

Richard L. Richards
RICHARDS GOLDSTEIN LLP
55 Miracle Mile, Suite 310
Coral Gables, Florida 33134
Telephone: (305) 448-2228
Facsimile: (305) 448-2229
Email: rrichards@rgattorneys.com

Timothy H. Bellas, LLC
JET Realty Building, Suite 204
P.O. Box 502845
Saipan, MP 96950
Telephone: (670) 323-1115
Email: timothy@bellaslawfirm.com