**ROBERT T. TORRES (F0197)**
ATTORNEY AT LAW
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 503758 CK
Saipan, MP 96950
Telephone: (670) 234-7859
Facsimile: (670) 234-5749

*Attorney for Defendant Commonwealth Ports Authority*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **STAR MARIANAS AIR, INC.,** | ) **Civil Case No. 17-00012** |
| | ) |
| **Plaintiff,** | ) **DEFENDANT COMMONWEALTH** |
| | ) **PORTS AUTHORITY'S REPLY TO** |
| **vs.** | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **MOTION TO DISMISS SECOND** |
| **COMMONWEALTH PORTS** | ) **AMENDED COMPLAINT** |
| **AUTHORITY, AND DOES 1-V,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

Plaintiff Star Marianas Air, Inc. ("SMA") opposes Defendant Commonwealth Ports Authority's ("CPA") motion to dismiss SMA's Second Amended Complaint, asserting jurisdiction of this Court on the following grounds: (1) resolution of SMA's breach of contract claim raises a federal question; (2) this Court has jurisdiction under the federal preemption provision of the Airline Deregulation Act; (3) the Rates and Charges Policy is applicable to written fee agreements, and therefore controls SMA's claim; and (4) the Federal Aviation Administration ("FAA") does not have primary jurisdiction over SMA's breach of contract claim.

1

CPA responds to SMA's arguments as follows: (1) none of the federal avenues cited by SMA confer jurisdiction and indeed all of them either establish that no private right of action exists or that the FAA has primary jurisdiction; (2) there is no jurisdiction under the Airline Deregulation Act as exercise of a proprietary power is specifically excepted by the federal preemption provision; and (3) whether or not the Rates and Charges Policy is applicable to written fee agreements is irrelevant to jurisdiction because the issue of the reasonableness of fees are subject to the jurisdiction of the FAA, whether imposed by agreement or not.

## I.   THERE IS NO FEDERAL QUESTION AND THE FAA HAS PRIMARY JURISDICTION OVER THE KEY ISSUE IN THIS MATTER

SMA claims that resolution of its breach of contract claim raises a substantial federal issue because CPA has allegedly violated its federal obligation to impose reasonable rates and charges pursuant to the FAA Policy regarding Airport Rates and Charges, 78 Fed. Reg. 55330 (Sept. 10, 2013) ("Rates and Charges Policy"). SMA cites a single case in support of its assertion that a state cause of action may also require resolution of a federal question, *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983). While *Franchise Tax Board* does cite the legal proposition that a well-pleaded complaint alleging a state cause of action may also arise under federal law if the resolution of the claim requires resolution of a federal question, SMA has not cited any authority for its proposition that an alleged violation of the Rates and Charges Policy is a violation of a federal law. 463 U.S. 1, 28 (vacating and remanding back to state court, finding "We hold that a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of

ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law."). Whether or not CPA has violated the Rates and Charges Policy or its grant assurances are issues for resolution by the FAA as they relate to the reasonableness of rates; and, further, the Rates and Charges Policy is inapplicable to fees set forth by written agreement.

**A. The FAA Has Primary Jurisdiction over Alleged Violations of the Rates and Charges Policy or Grant Assurances as they relate to Reasonableness of Rates and SMA has Failed to Exhaust Administrative Remedies**

If, as SMA argues, its breach of contract claim revolves around the resolution of what constitutes a reasonable fee under the Rates and Charges Policy or whether CPA has violated its grant assurances, then at a minimum, this Court must place this matter in abeyance and await the resolution of the FAA Part 16 investigation.

The primary jurisdiction doctrine provides that "[w]hen there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." *U.S. v. Culliton,* 328 F.3d 1074, 1081 (9th Cir. 2003) (quoting *United States v. General Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir. 1987) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic No. 99,* 400 U.S. 62, 68 (1970)). Determining whether the doctrine of primary jurisdiction applies depends on "the extent to which Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues arising in juridical proceedings." *Id.* at 1082 (citing *General Dynamics Corp.,* 828 F.2d at 1362) (citing

*United States v. RCA*, 358 U.S. 334 (1959)). In order to determine whether Congress has so intended an administrative body to have the first word, a court looks to certain factors which are "uniformly present" in cases where courts refrain from judicial action on particular issues. *Id.* These factors include "[c]ongressional intent to imbue an administrative agency with total responsibility to resolve or address the particular issue and the need for expertise or uniformity in the administration of such a decision." *Id.* (citing *General Dynamics Corp.*, 828 F.2d at 1363). An agency's competence to handle an issue alone is not sufficient; "[t]he particular agency deferred to must be one that Congress has vested with the authority to regulate an industry or activity such that it would be inconsistent with the statutory scheme to deny the agency's power to resolve the issues in question." *Id.* (citing *General Dynamics Corp.*, 828 F.2d at 1363).

Under 49 U.S.C. §§ 40101, *et. seq*, the Federal Aviation Act of 1958, the FAA has broad authority to regulate air commerce. The Airport and Airway Improvement Act of 1982 ("AAIA") authorizes the FAA to grant federal funds to public airports for construction and other improvement projects via the AAIA's Airport Improvement Program ("AIP"). Recipients of AIP grants must provide written assurances that they will comply with numerous statutory requirements ("grant assurances"). Airports receiving federal assistance under an AIP grant must be "available for public use on reasonable conditions and without unjust discrimination." 49 U.S.C. § 47107(a)(1). Pursuant to 49 U.S.C. § 47107, the FAA must ensure that airport owners comply with grant assurances, including the obligation to impose reasonable rates and charges and to apply its rates and charges in a uniform and nondiscriminatory manner. The trigger for the Rates and Charges Policy was the enactment of Section 133 of the FAA

4

Reauthorization Act of 1994, now codified as 49 U.S.C. § 47129(b)(2), requiring the Department of Transportation/FAA to publish "standards or guidelines that shall be used by the Secretary in determining under this section whether an airport fee is reasonable." The FAA is empowered to adjudicate certain disputes, including complaints that an airport proprietor has violated grant assurances. 14 C.F.R. § 16.1(a); *see also* 49 U.S.C.A. § 46110 (disposition of complaints heard initially in administrative proceedings before the Secretary of Transportation are subject to judicial review in a federal district court).

At a minimum, the FAA has primary jurisdiction over the issue of whether CPA has violated the Rates and Charges Policy and its grant assurances by charging allegedly unreasonable or discriminatory fees. More compellingly, SMA is required to exhaust its administrative remedies before the FAA before bringing the issue of reasonableness of rates before this Court. If SMA is correct that its breach of contract claim turns on whether the rates are reasonable under federal law, the Court should defer to the FAA on that point. Whether CPA has violated its grant assurances by charging fees that allegedly violate the policy set forth by the Rates and Charges Policy is an issue already before the FAA, which is where this matter should be in the first instance. SMA cites numerous federal policies, including the Rates and Charges Policy, the AAIA, and the Anti-Head Tax Act, in an attempt to dress up its claim as a federal question. A closer look at each allegation of federal question reveals that none of the avenues cited by SMA confer federal jurisdiction and indeed establish that its claim must be heard first by the FAA, as it requires a determination on the reasonableness of rates.

SMA has filed an Amended Complaint against CPA under Title 14 CFR Part 16 in the United States Department of Transportation, Federal Aviation Administration, under FAA

Docket No. 16-14-02; a copy of that Amended Complaint has already been provided to this Court. SMA's claim of unreasonable fees is already being heard via the administrative process before the FAA, and this is where SMA's claim should be. Because the FAA has the primary jurisdiction to determine whether rates are reasonable and whether grant assurances have been violated, and, more importantly, because the FAA has the expertise necessary to decide these issues, this Court should require SMA continue its pursuit of its administrative remedy and should dismiss SMA's private action in this Court until these specialized issues are resolved. It is a matter of judicial restraint that this Court should not consider SMA's claim as they relate to these specialized issues while an administrative tribunal with jurisdiction over those matters is considering them.

**B.   Fees in Written Agreements are also under FAA Purview**

SMA concedes that under 49 U.S.C. § 47129, an air carrier may file a formal complaint with the Department of Transportation challenging the reasonableness of an airport fee but that this procedure is inapplicable to fees imposed by a written agreement. (ECF 29 at 6). SMA then argues that 49 U.S.C. § 47129 is irrelevant because its claim is brought in this Court as a breach of contract claim as opposed to a claim brought before the Department of Transportation. (ECF 29 at 6). The gist of SMA's argument is that because its claim is not brought before the Department of Transportation (which is where it is and should be because of the issues that underpin it), that the exclusion for written fee agreements under the Rates and Charges Policy otherwise does not apply to its claim of unreasonable rates in front of this Court. Even if this were true, however, the avenue for challenging fees and rates should still be initiated via an action with the DOT under 14 C.F.R. Part 302 or with the FAA under Part 16. *See, e.g., Air*

6

*Canada v. Dep't. of Transp.,* 148 F.3d 1142, 1145 (D.C. Cir. 1998) (noting that air carriers have "two administrative options...traditional investigation by the FAA or expedited determination by the Secretary [of the Department of Transportation]..."). SMA's only recourse here is under Part 16, as the procedure under Part 302 is not applicable to fees set by written agreement. *See* 14 C.F.R. § 302.601(b)(1).

CPA maintains that the fees set forth by its Airline Use Agreement with SMA are not governed by the Rates and Charges Policy. *See* 78 Fed. Reg. 55330, at 55331-32 ("Section 47129(e) excludes from the applicability of § 47129 a fee imposed pursuant to a written agreement with air carriers or foreign air carriers, a fee imposed pursuant to a financing agreement or covenant entered into before the date of enactment of the statute (August 23, 1994), and an existing fee not in dispute on August 23, 1994.") ("In addition, the Department will not entertain a complaint about the reasonableness of a fee set by agreement filed by a party to the agreement setting the disputed fee.").The Court, however, need not even decide whether the Rates and Charges Policy applies to written agreements, because even if it did, disputes over fees governed by written agreements must still be heard by the FAA; SMA's argument that its dispute falls outside the parameters of 49 U.S.C. § 47129 does not change that. *See* 78 Fed. Reg. 55330, at 55331-32 "[A] dispute that is not subject to processing under the expedited procedures mandated by § 47129, including a dispute over matters described by § 47129 (e) and (f), will be processed by FAA under procedures applicable to airport compliance matters in general.").

//

//

## II. THERE IS NO JURISDICTION UNDER THE FEDERAL PREEMPTION PROVISION OF THE AIRLINE DEREGULATION ACT

SMA claims this Court has jurisdiction over its claim under the federal preemption provision of 49 U.S.C. § 41713(b)(3), the Airline Deregulation Act. CPA has argued that it falls within the exception created by 49 U.S.C. § 41713(b)(3) because it is within CPA's proprietary powers and rights to charge reasonable fees. SMA argues that CPA has not shown that the right to charge reasonable fees is a proprietary right, and instead claims that proprietary rights excluded by the Airline Deregulation Act are rights more akin to functions relating to airport noise regulations or airport curfews.

The Airline Deregulation Act provides that "[e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." However, subsection (b)(3) of 49 U.S.C. § 41713 qualifies this express preemption by stating that the subsection expressly providing for preemption "does not limit a State, political subdivision of a State, or political authority of at least 2 States that owns or operates an airport served by an air carrier holding a certificate issued by the Secretary of Transportation from carrying out its proprietary powers and rights." 49 U.S.C. § 41713(b)(3).

What constitutes a proprietary right is not set forth in the Airline Deregulation Act. *Air Transport Ass'n of America v. City and County of San Francisco*, 992 F. Supp. 1149, 1188 (9th Cir. 1998), *aff'd and remanded on other grounds*, 266 F.3d 1064 (9th Cir. 2001). "A Senate Report on the ADA states that the preemption provision 'should not be construed to affect or

limit existing proprietary rights of airport operators to manage, operate, or regulate airports.'" *Id.* (quoting S.Rep. No. 631, 95th Cong., 2nd Sess. 39, 99 (1978)). The legislative history similarly also refers to "normal proprietary functions ... such as the establishing of curfews and landing fees which are consistent with other requirements in Federal law." *Id.* (citing 123 Cong.Rec. 30, 595–96 (Sept. 23, 1977))*; see e.g. Air Transport Ass'n of America, Inc. v. U.S. Dept. of Transp.,* 613 F.3d 206, 216 (D.C. Cir. 2010) (holding that nothing in the Airline Deregulation Act prohibits an airport from charging a reasonable landing fee; conversely, the Airline Deregulation Act preemption specifically carved out an exception allowing an airport authority to carry out its proprietary powers and rights.)

SMA has not cited to any authority within the Airline Deregulation Act or any other legal authority to support its assertion that the right to charge reasonable fees is not a proprietary right. Nothing in the Airline Deregulation prohibits CPA from imposing reasonable fees and indeed legislative history indicates that normal proprietary functions include the establishment of fees. CPA falls within the exception created by 49 U.S.C. § 41713(b)(3) because it is within CPA's proprietary powers and rights to charge reasonable fees. Accordingly, this Court does not have jurisdiction under the federal preemption provision of the Airline Deregulation Act.

Further, the U.S. Supreme Court has said that an airline's "self-imposed undertakings" are not preempted by the Airline Deregulation Act. *See American Airlines v. Wolens,* 513 U.S. 219 (1995). Here, the Airline Use Agreement is such a self-imposed undertaking—an agreement entered into by SMA of its own accord. Thus, SMA cannot now argue that the fees imposed by CPA pursuant to the Airline Use Agreement violate the Airline Deregulation Act. The public policy is clear. Any contract under which an airline agrees to pay for something will

affect that airline's overall costs and, likely, the fares it must collect from its passengers or shippers. That does not make that contract a violation of the Airline Deregulation Act.

### III. CONCLUSION

SMA's Second Amended Complaint must be dismissed. SMA alleges CPA breached the Airline Use Agreement by violating federal laws. The only federal laws SMA cites, however, are the AAIA and the Anti Head Tax Act, and neither of these federal laws confer a private right of action. Further, any alleged violation of the Rates and Charges Policy and thus grant assurances is under the jurisdiction of the FAA. SMA alleges the Airline Deregulation Act confers federal jurisdiction, but the very authority SMA cites contains an exception for an airport's proprietary powers. SMA has attempted to cloak its plain vanilla breach of contract claim in new clothes relating to the Anti Head Tax Act, the Rates and Charges Policy, grant assurances, and the Airline Deregulation Act. A closer look at each federal cloak reveals that SMA's claims of jurisdiction fail. This dispute over fees is already properly before the FAA, which has primary jurisdiction over this issue, and this is where SMA's claim should remain.

Respectfully submitted this 20th day of August, 2018.


/s/ Robert T. Torres
Robert T. Torres
Attorney for Defendant Commonwealth Ports Authority

1

## CERTIFICATE OF SERVICE

2
3

I hereby certify that the following were served with the foregoing document and all attachments thereto via the Court's Case Management/Electronic Case Filing system (CM/ECF):

4

*Attorneys for Plaintiff Star Marianas Air, Inc.*

5
6
7
8
9

Richard L. Richards
RICHARDS GOLDSTEIN LLP
55 Miracle Mile, Suite 310
Coral Gables, Florida 33134
Telephone: (305) 448-2228
Facsimile: (305) 448-2229
Email: rrichards@rgattorneys.com

10
11
12
13

Timothy H. Bellas, LLC
JET Realty Building, Suite 204
P.O. Box 502845
Saipan, MP 96950
Telephone: (670) 323-1115
Email: timothy@bellaslawfirm.com

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28