F I L E D
Clerk
District Court
AUG 30 2018
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| STAR MARIANAS AIR, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COMMONWEALTH PORTS AUTHORITY, and DOES I-V, <br><br> Defendants. | Case No.: 17-cv-00012 <br><br> **DECISION AND ORDER GRANTING DEFENDANT CPA'S MOTION TO DISMISS AND DISMISSING COMPLAINT WITHOUT PREJUDICE** |

This case involves the Airline Use Agreement entered into between Plaintiff Star Marianas Air, Inc., and Defendant Commonwealth Ports Authority ("CPA"). Plaintiff alleges that Defendant has breached the contract by violating its federal obligations. (*See* Second Am. Compl., ECF No. 26.)

Presently before the Court is CPA's motion to dismiss the second amended complaint for lack of subject matter jurisdiction. (ECF No. 27.) The motion has been fully briefed,[1] and the Court decides the motion without a hearing.

For the reasons set forth below, Defendant's motion is GRANTED. The second amended complaint as to Defendant CPA and Does I-V is dismissed without prejudice.

**I.   BACKGROUND**

The background of this dispute is discussed in detail in the Decision and Order on Defendant's motion to dismiss the first amended complaint, and is incorporated by reference here. (Decision and

---

[1] Motion to Dismiss, ECF No. 27; Mem. in Supp., ECF No. 28; Resp. Br., ECF No. 29; Reply Br., ECF No. 30.

1

Order, ECF No. 25.) Only the details relevant to resolving this motion are recounted below.

### *FAA Policy Regarding Airport Rates and Charges*

The Federal Aviation Administration ("FAA") permits rates and charges to be set "at the local level by agreement between users and airports." (Policy Regarding Airport Rates and Charges (Sept. 10, 2013), ECF No. 26-1.) The Department of Transportation will determine the reasonableness of such fees "in response to carrier complaints or a request for determination by an airport proprietor" pursuant to the procedure set out in 49 U.S.C. § 47129. (*Id*.) However, the Department "will not entertain a complaint about the reasonableness of a fee set by agreement filed by a party to the agreement setting the disputed fee." (*Id*.) Fees set pursuant to a written agreement with an air carrier under § 47129(e) are "not subject to processing under the expedited procedures mandated" by § 47129(a) and will "be processed by FAA under procedures applicable to airport compliance matters in general." (*Id*.)

### *CPA Airport Rules and Regulations*

Defendant CPA has promulgated Airport Rules and Regulations that "have the force and effect of law" and set out the fees and charges that airlines must pay. (Airport Rules & Regs. 1.1, ECF No. 26-2 at 1.) Rule 7.9 states that "no air carrier . . . shall utilize any terminal facility owned or operated by the authority unless such air carrier shall have entered into a written airline use/operating agreement." (*Id*. at 22.) Further, no person may "land an aircraft on or take off from airport, or use an operational area, except upon the payment of such fees and charges" approved by CPA. (Rule 1.1, ECF No. 26-2 at 5.)

Section 12 sets out the applicable fees that airlines and other entities must pay. (*Id*. at 33–38.)

Of relevance to this case are the landing fees and departure facility charges. Rule 12.1 specifies that landing fees for Saipan International Airport shall be $1.40 "per thousand (1,000) pounds certified maximum gross landing weight of the aircraft as determined by the FAA for said aircraft." (*Id.* at 33.) The landing fees for Rota International Airport and West Tinian International Airport are $1.06 per thousand pound certified maximum gross landing weight. (*Id.*) Departure facility service charges set out in Rule 12.3 are calculated "on a per revenue passenger basis" and set at $8.00 per passenger for the Saipan International Airport; $3.35 per passenger at the Saipan Commuter Terminal; and $4.95 per passenger at the Rota and West Tinian Terminals. (*Id.*)

### *Agreement between Star Marianas Air and CPA*

In April 2009, Plaintiff entered into an agreement with CPA to lease airport terminal space on Saipan and Tinian. (Secs. 2.01–02, ECF No. 26-3 at 17–18.) Two years later, in 2011, the parties executed a separate agreement through which Plaintiff leased airport terminal space on Rota. (ECF No. 26-4.)[2] By executing these agreements, Plaintiff agreed to abide by all Airport Rules and Regulations, including the provisions imposing and requiring payment of fees and charges.

//

/

---

[2] The second amended complaint is premised on breaches of the AUA, which covers fees and charges incurred at the Saipan and Tinian terminals. However, the complaint also indicates that Plaintiff is contesting the fees and charges incurred at the Rota terminal. The Rota lease agreement does not refer to or indicate that it has incorporated the terms of the AUA. Although the Court is not convinced that Plaintiff has any claims or damages based on fees incurred on Rota, the Court need not decide this issue for purposes of resolving the instant motion.

3

Plaintiff is now suing CPA for allegedly breaching the Airline Use Agreement ("AUA"). (*See* Second Am. Compl. ¶¶ 87–107.) In particular, Plaintiff makes the following allegations with regard to the conduct that breaches the contract:

- The AUA requires CPA to charge reasonable and nondiscriminatory fees in section 7.05 and must adjust the fees annually based on its costs, and incorporates the federal provisions, 49 U.S.C. §§ 40116, 47107 into the Agreement. (*Id.* ¶¶ 102–03.)

- The CPA failed to comply with its requirements under the AUA by continuing to charge unreasonable arbitrary amounts for fees and charges. (*Id.* ¶ 90.)

- The CPA imposes a fee that is not related to the recovery of the adjusted annual cost of the Authority for operations of the Terminals attributable to Star Marianas. Instead, the CPA assesses user fees solely based on the number of Star Marianas passengers that it emplaned at the Terminals, which results in fees that do not bear any relationship to the CPA's operational expenses. (*Id.* ¶¶ 91–93.)

- The CPA's rates are not reasonable and instead are used to generate significant revenues in violation of the Authority's federal obligations. (*Id.* ¶ 94.)

    o In particular, the CPA charged (1) an arbitrary amount per passenger unrelated to the Authority's operational costs; (2) an arbitrary amount for landing fees unrelated to landing weight attributable to Star Marianas; and (3) fees for areas of the Terminals supported by federal grants. (*Id.* ¶ 97.)

- As evidence of the breaches related to fees, Plaintiff alleges the following:

    o Defendant has never provided Star Marianas with a proposed annual budget or an opportunity to comment on a proposed budget, and has also never adjusted fees to recover only its legitimate operational costs. (*Id.* ¶ 95.)

- o Star Marianas pays $320 per month for a lease and $3,200 per month on average for fees, which demonstrates that the fees are unreasonable. (*Id.* ¶ 101.)

- o Star Marianas paid an average of $27,000 per month in fees during 2015, which is unreasonable. (*Id.* ¶ 105.)

Defendant now seeks to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Mem. in Supp., ECF No. 28.)

## II. LEGAL STANDARD

"The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Rule 12(b)(1) challenges may be facial or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone V. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Further, in a facial attack, a court must assume the allegations in the complaint to be true and "draw all reasonable inferences in [plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (internal citations omitted). With respect to a factual attack, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. Once the moving party submits affidavits or other evidence, the opposing party "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

*Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

## III. DISCUSSION

Plaintiff asserts that the Court has subject matter jurisdiction over its breach of contract claim because the claim involves a substantial question of federal law, and, alternatively, because the Airline Deregulation Act preempts state law. (Second Am. Compl. ¶¶ 4–5; Resp. Br. 3–5, ECF No. 29.)

### A. Substantial Federal Question

Plaintiff first asserts that the Court has subject matter jurisdiction over the breach of contract claim because the claim raises substantial federal issues. (Second Am. Compl. ¶ 5; Resp. Br. 3–4, ECF No. 29.) Specifically, Plaintiff cites 49 U.S.C. § 47107 and the Federal Aviation Administration's Policy Regarding Airport Rates and Charges, 78 Fed. Reg. 55330 (Sept. 10, 2013). (Second Am. Compl. ¶ 5.) Plaintiff also alleges that the contract incorporates 49 U.S.C. § 40116, and breaches of that statute are therefore also breaches of the contract. (*Id.* ¶ 103.)

Federal subject matter jurisdiction exists when a state law claim "necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, ___U.S.___, 136 S. Ct. 1562, 1569–70 (2016) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'rg & Mfg.*, 545 U.S. 308, 314 (2005)). This situation typically occurs when a "state-law cause of action is brought to enforce a duty created" by a federal law "because the claim's very success depends on giving effect to a federal requirement." *Id*. at 1570. However, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a

claim 'arising under the Constitution, laws, or treaties of the United States'" and a federal court therefore lacks jurisdiction over such a claim. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

### i. 49 U.S.C. § 40116

The Court has already determined that there is no private right of action under § 40116, the Anti-Head Tax Act. (*See* Decision and Order, ECF No. 25.) This determination stands, particularly as no party has contested it. *See Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (law of the case doctrine applies to prior decisions by the court). Therefore, § 40116 cannot serve as the basis on which the Court may assert subject matter jurisdiction.

### ii. 49 U.S.C. § 47107

Plaintiff next asserts breach of contract based on violations of § 47107, which it claims is incorporated into section 7.05 of the AUA. (Second Am. Compl. ¶¶ 63–64.) Defendant contends that this statute is not incorporated, and even if it is, there is no private right of action under it. (Mem. in Supp. 8–12.)

With respect to Defendant's first argument, the Court agrees that § 47107 is not incorporated into section 7.05. Nothing in the text states that it is incorporated. Under the CNMI rules of contract interpretation, the "primary concern" is to "determine and give effect to the intentions of the parties as expressed in the instrument, and the intent of contracting parties is generally presumed to be encompassed by the plain language of contract terms." *Saipan Achugao Resort Members' Ass'n v. Wan Jin Yoon*, 2011 MP 12, ¶ 15. Given that there is no express reference to § 47107 or to compliance with federal law with regard to CPA, the plain language suggests that the contract did not intend to

7

incorporate § 47107 as an obligation on CPA. This conclusion is supported by the fact that the AUA includes provisions requiring Star Marianas to comply with various federal laws and regulations. (*See, e.g.*, sec. 11.01(A)(3) ("Airline shall comply . . . with all applicable federal, commonwealth, and local laws . . . relating to health, safety, and protection of persons, the public and the environment"). Where the parties wanted to include compliance with federal law as a term of the contract, they clearly knew how to do so. That there is no such obligation imposed on CPA indicates that § 47107 is not incorporated by implication into section 7.05 of the AUA. The alleged breach of contract based on violations of § 47107 therefore does not include a violation of a federal statute as an essential element of the claim.

Even assuming that § 47107 were incorporated into the AUA, however, the Court finds that there is no private right of action under this federal statute. To determine whether a federal statute confers an implied right of action, a court must apply the four-factor test from *Cort v. Ash*. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1231 (9th Cir. 2008). The four factors are (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is evidence of legislative intent to create or deny a remedy; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is "traditionally relegated to state law." *Id.* (quoting *Cort*, 422 U.S. 66, 78 (1975)). The "key inquiry in this calculus" is the second factor. *Id.* (internal quotation omitted). "And as with any case involving the interpretation of a statute," the analysis "must begin with the language of the statute itself." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Greene v. Sprint Commc'n Co.*, 340 F.3d 1047, 1050 (9th Cir. 2003). The legal context "matters only to the extent it clarifies text."

*Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).

In this case, the second and primary focus of the inquiry—congressional intent—demonstrates that there is no private right of action. Section 47107(a) states that "The Secretary of Transportation may approve a project grant application under this subchapter for an airport development project only if the Secretary receives written assurances, satisfactory to the Secretary," for a number of conditions set forth in the statute. 49 U.S.C. § 47107(a). The other subsections speak in similar language, all focused on the Secretary. *See id*. Each of the federal courts of appeal to consider this language, which imposes only a duty to give assurances to the Secretary, has found that "Congress intended to enact an exclusively administrative enforcement" that is "inconsistent with a private right of action." *Interface Grp., Inc. v. Mass. Port Auth.*, 816 F.2d 9, 15 (1987); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 915 (8th Cir. 1997); *Nw. Airlines, Inc. v. Cnty. of Kent, Mich.*, 955 F.2d 1054, 1058–59 (6th Cir. 1992); *N. England Legal Found. v. Mass. Port Auth.*, 883 F.2d 157, 169 (1st Cir. 1989); *W. Air Lines, Inc. v. Port Auth. of N.Y. and N.J.*, 817 F.2d 222, 224 (2d Cir. 1987); *Arrow Airways, Inc. v. Dade Cnty.*, 749 F.2d 1489, 1491 (11th Cir. 1985).

The Court finds this line of cases persuasive and adopts the reasoning. This determination is further supported by the Supreme Court's recent, "far more cautious course before finding implied causes of action," which is premised on the logic that "where Congress intends private litigants to have a cause of action, the far better course is for Congress to confer that remedy in explicit terms." *Ziglar v. Abbasi*, ___U.S.___, 137 S. Ct. 1843, 1855 (2017). Accordingly, because the Court finds no private right of action under § 47107, the statute cannot serve as the basis of federal jurisdiction.

9

### iii. FAA Policy Regarding Airport Rates and Charges

The FAA Policy Regarding Airport Rates and Charges was promulgated pursuant to 49 U.S.C. § 47129—also known as section 113 of the Federal Aviation Authorization Act—to establish "standards or guidelines the Secretary will use in determining the reasonableness of airport fees charged to airlines under § 47129." 78 Fed. Reg. 55330-02 (Sept. 13, 2010.)

49 U.S.C. § 47129(a) states that the Secretary of Transportation shall issue a determination as to whether a fee imposed . . . is reasonable" if a written request or complaint is received. § 47129(b) requires the Secretary to promulgate "(1) the procedures for acting upon any written request or complaint" and "(2) the standards or guidelines that shall be used by the Secretary in determining" whether a fee is reasonable." These expedited procedures do not apply to "a fee imposed pursuant to a written agreement with air carriers." 49 U.S.C. § 47129(e)(1).

The Policy is a policy statement created pursuant to § 47129(b). Thus, the relevant question is whether the statute under which the Federal Aviation Administration created the policy statement includes a private right of action because there can be no right under the regulations if the statute does not authorize it. *G.S. Rasmussem & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 901–02 (9th Cir. 1992). Applying the *Cort* test to § 47129, the Court finds that there is no private right of action under the statute or policy statement.

The Ninth Circuit has said, "there is no implied private right of action under the Federal Aviation Act." *Id*. This prior determination, although addressing a different section of the FAA than is in dispute here, is consistent with the text of § 47129, which is section 113 of the FAA. The text of section 113 speaks only to the Secretary of Transportation, imposing obligations on him or her to

10

develop procedures for assessing the reasonableness of fees. Moreover, the text requires the creation of procedures for the administrative enforcement scheme, which clearly weighs against finding a private right of action. Accordingly, the Court finds that there is no private right of action under § 47129 and therefore, there cannot be a private right of action under the policy statement promulgated pursuant to this statute. Thus, the FAA Policy Regarding Airport Rates and Charges does not confer subject matter jurisdiction on this Court.

### B. Federal Preemption

Plaintiff asserts that the Court has federal preemption jurisdiction under 49 U.S.C. § 41713, the Airline Deregulation Act. (Second Am. Compl. ¶ 5.) Defendant responds that the preemption provision does not apply to the imposition of fees because the statute does not limit it "from carrying out its proprietary powers and rights." (Mem. in Supp. 12–13, ECF No. 28 (citing 49 U.S.C. § 41713(b)(3)).)

Section 41713 provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

Federal preemption is a defense that may provide for removal of cases involving state law to federal court, but it does not create federal question jurisdiction for a plaintiff attempting to file suit in federal court. Rather, it is "settled law that a case may not be" filed in federal court "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question

11

truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). There is a limited exception to the rule that preemption does not create the basis for jurisdiction: complete preemption. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002). Complete preemption applies when "the preemptive force of federal statutes is so strong that they completely preempt an area of state law," and therefore any claim under those statutes is "considered, from its inception, a federal claim, and therefore arises under federal law." *Id*.

Complete preemption does not apply to this case, as the Ninth Circuit has already determined that the Airline Deregulation Act does not completely preempt state law. *Id*. at 1184. Because the Deregulation Act does not completely preempt state law, Plaintiff cannot assert preemption as the basis for federal jurisdiction. Accordingly, Defendant's motion to dismiss for lack of jurisdiction based on federal preemption is granted.

## IV. CONCLUSION

For the reasons articulated above, Defendant's motion to dismiss the second amended complaint (ECF No. 27) is GRANTED.

Furthermore, because the Court has an independent duty to determine whether it has subject matter jurisdiction, the Court finds that it lacks jurisdiction over the breach of contract claim against Defendant Does I-V for the same reasons as discussed with regard to CPA. *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004) ("a district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

12

Accordingly, it is ORDERED that the second amended complaint be DISMISSED WITHOUT PREJUDICE as to all Defendants.

IT IS SO ORDERED.



                                          **/s/ Frances M. Tydingco-Gatewood**
                                               **Designated Judge**
                                          **Dated: Aug 30, 2018**